UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
GENUSWAVE LIMITED and STEVEN          :
ALEVY,                               :
                                     :
                      Plaintiffs,    :        ORDER
                                     :
        -against-                    :        24-CV-5466 (EK)(MMH)
                                     :
ASHER BAUM, MITCHELL BOGART, and     :
ISRAEL NISSENBAUM,                   :
                                     :
                      Defendants.    :
------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiffs GenusWave Limited ("GenusWave") and Steven Alevy sued Defendants

Asher Baum, Mitchell Bogart, and Israel Nissenbaum, alleging, *inter alia*, misappropriation

of trade secrets, breach of contract, fraudulent and negligent misrepresentation, and unfair

competition related to a purported agreement to develop medical technology. (*See generally*

ECF No. 1.)[1]  Before the Court is Defendants' motion to disqualify Alevy's attorney, Allen P.

Sragow, which Alevy opposes.  For the reasons set forth below, Defendants' motion is **denied**.

I.      **BACKGROUND**

This case involves a dispute between the investors of an ultraviolet C light-based

technology ("UVC Technology") for potential medical and commercial use, and the attorney

who assisted them in developing the UVC Technology, as well as related patent and

intellectual property matters. (Compl., ECF No. 1 ¶¶ 3–4, 7–8, 20, 23, 45.)  As alleged in the

Complaint, Alevy is the director of GenusWave, a Scottish company that develops medical-

---

[1] All citations to documents filed on ECF are to the ECF document number (i.e., "ECF No. ___")
and pagination "___ of ___" in the ECF header unless otherwise noted.

related technology.  (*See id.*, ¶¶ 1, 13–14.)  Nissenbaum, an intellectual property attorney, represented Alevy and Plaintiffs from approximately 2012 through 2021, including for patent prosecutions and related legal advice.  (*Id.* ¶¶ 2, 20, 40.)

In May 2020, Nissenbaum approached Plaintiffs with an opportunity to invest in the UVC Technology.  (*Id.* ¶ 21.)  Nissenbaum then facilitated a meeting between Plaintiffs and Baum and Bogart, Nissenbaum's business associates, to discuss developing the UVC Technology to make it suitable for clinical development and commercialization.  (*See id.* ¶¶ 4–5, 44–45.)  On June 17, 2020, one week after the meeting, Nissenbaum entered into an oral agreement with Plaintiffs whereby GenusWave would invest in the UVC technology in exchange for a 70% ownership interest in the resulting intellectual property and any entity formed to commercialize it, while Nissenbaum would retain 30% interest; any ownership interest to Baum or Bogart would be paid from Nissenbaum's share.  (*Id.* ¶¶ 8, 22.)

Between June 2020 and July 2021, the parties worked together to develop the UVC Technology by, *e.g.*, building prototypes, developing commercialization strategies, and engaging GenusWave's external engineering experts.  (*See id.* ¶¶ 7–8, 27, 33, 36, 51–52, 54–56, 76–81, 89.)  During that period, GenusWave contributed more than $60,000.00 to development of the UVC Technology, including payments to Nissenbaum and two companies later revealed as affiliated with Baum.  (*See id.* ¶¶ 9, 24.)  Beginning in November 2020, Baum served as GenusWave's Product Manager for the UVC Technology and Bogart collaborated in the development of the UVC Technology as GenusWave's Chief Technology Officer.  (*Id.* ¶¶ 5–6, 15–16, 48–49.)  Further, Nissenbaum regularly provided legal services such as drafting patent applications relating to the UVC Technology and nondisclosure agreements ("NDAs") between GenusWave and third-party experts.  (*See id.* ¶¶ 8, 23, 29–30, 57–60.)

2

On July 22, 2021, Nissenbaum met with Plaintiffs and asked them to accept a reduction of GenusWave's ownership stake to accommodate a strategic investor's controlling interest, but Plaintiffs refused.  (*Id.* ¶ 34.)  In a letter dated July 28, 2021, Baum's attorney informed Alevy that, *inter alia*, GenusWave had no stake in the UVC Technology and that Defendants continued to be involved in developing medical technology related to the UVC Technology.  (*See id.* ¶¶ 91–96).  Shortly thereafter, in August 2021, Plaintiffs received a letter from Nissenbaum's counsel disclaiming the existence of a contract between the parties.  (*Id.* ¶¶ 38–39, 98.)  After additional correspondence, on November 1, 2021, Nissenbaum formally withdrew his representation of Alevy on UVC Technology-related matters.  (*Id.* ¶¶ 40, 101.)  Plaintiffs assert that Defendants deprived GenusWave of its alleged ownership interest in the UVC Technology while retaining the benefits of Plaintiffs' financial contributions and resources.  (*Id.* ¶¶ 10–12.)

Plaintiffs, represented by former counsel Ballard Spahr, initiated this action on August 5, 2024.  (*See generally id.*)  Defendants, represented by Moskowitz, answered the Complaint on October 7, 2024.  (ECF No. 20.)[2]  In May 2025, the Court granted Ballard Spahr's motion to withdraw as Plaintiffs' counsel of record.  (ECF No. 27; May 20, 2025 Order.)  Subsequently, John Hofsaess appeared on behalf of GenusWave and Sragow appeared on behalf of Alevy.  (*See* ECF Nos. 34, 36–37.)

Defendants seek to disqualify Sragow from representing Alevy in this action because he has a conflict of interest based on prior representation of Plaintiffs and Nissenbaum and he is a necessary witness in this action.  (*See generally* Defs.' Mot., ECF No. 40.)  Alevy opposes

---

[2] The case was reassigned to the undersigned on December 19, 2024.  (Dec. 19, 2024 Dkt. Entry.)

this motion.  (*See generally* Alevy Resp., ECF No. 41.)  The Court heard oral argument on February 12, 2026, and reserved decision.  (*See* Feb. 12, 2026 Min. Entry; Feb. 12, 2026 Tr. ("Tr."), ECF No. 44.)

## II.    **DISCUSSION**

### A.    **Legal Standard**

Motions to disqualify counsel are matters within the court's discretion.  *See GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010).  "The Court's authority to disqualify attorneys stems from its 'inherent power to preserve the integrity of the adversary process.'"  *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 267 (E.D.N.Y. 2015) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)).

"'[D]isqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, . . . or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation[.]'"  *Hreish v. Pappas*, No. 24-CV-2284 (JHR)(BCM), 2025 WL 1653841, at *6 (S.D.N.Y. June 10, 2025) (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764–65 (2d Cir. 1990), which in turn quotes *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).  Indeed, "motions to disqualify counsel are disfavored and subject to a high standard of proof, in part because they can be used tactically as leverage in litigation."  *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791, 791–92 (2d Cir. 1983)).  "Although the American Bar Association ('ABA') and state disciplinary codes provide valuable guidance, a violation

4

of those rules may not warrant disqualification." *GSI Com. Sols., Inc.*, 618 F.3d at 209 (citing

*Hempstead Video, Inc.*, 409 F.3d at 132 (citations omitted)).

### B.    Analysis

#### 1.    Conflict of Interest

Defendants allege that Sragow has a conflict of interest in representing Alevy because

he represented and worked with Defendants to draft NDAs and review patent applications

during the development stages of the UVC Technology.  (Defs.' Mem., ECF No. 40-1 at 13–

15.)  Alevy counters that Sragow never represented Defendants.  (Alevy Resp., ECF No. 41 at

4–6.)

"The balance required to sustain a motion for disqualification varies based on the type

of conflict present"—*i.e.*, whether the conflict stems from concurrent or successive

representation.  *Giambrone*, 117 F. Supp. 3d at 268 (citing *GSI Com. Sol.*, 618 F.3d at 209 and

*Hempstead Video*, 409 F.3d at 133).  "Concurrent representation, in which an attorney

simultaneously represents one existing client in a matter adverse to another existing client, is

'prima facie improper' and requires the attorney facing disqualification to show, at the very

least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of

his representation."  *Castillo Abreu v. Alvarez*, No. 21-CV-1641 (RER)(VMS), 2024 WL

5251985, at *2 (E.D.N.Y. Dec. 31, 2024) (quoting *GSI Com. Sols., Inc.*, 618 F.3d at 209)

(cleaned up); *see also* N.Y. Comp. Codes R. & Regs. Tit. 22 § 1200.1.7(a)(1) (a conflict of

interest exists if "the representation will involve the lawyer in representing differing interests"

among current clients).  Successive representation, on the other hand, requires a three-part test,

and an attorney may be disqualified for representing a current client against a former client if:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Giambrone*, 117 F. Supp. 3d at 269 (citing *Nordwind v. Rowland*, 584 F.3d 420, 435 (2d Cir. 2009); *see also* N.Y. Comp. Codes R. & Regs. Tit. 22 § 1200.1.9(a).

Defendants' arguments rely on the existence of an attorney-client relationship with Sragow, which "hinges upon the client's reasonable belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." *O'Rear v. Diaz*, No. 24-CV-1669 (PAE), 2024 WL 3983363, at *5 (S.D.N.Y. Aug. 29, 2024) (citing *Diversified Group, Inc. v. Duagerdas*, 139 F. Supp. 2d 445, 454 (S.D.N.Y. 2001)) (cleaned up). Courts may assess the following factors in determining the existence of a lawyer-client relationship:

> (1) whether a fee arrangement was entered into or a fee paid; (2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; (3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; (4) whether the attorney actually represented the individual in one aspect of the matter (*e.g.*, at a deposition); (5) whether the attorney excluded the individual from some aspect of the litigation in order to protect another client's interest; and (6) whether the purported client believes that the attorney was representing her and whether this belief is reasonable.

*Id.* (citing *Merck Eprova AG v. ProThera, Inc.*, No. 08-CV-35 (RMB)(JCF), 2009 WL 10696470, at *7 (S.D.N.Y. Oct. 6, 2009)); *see also Miehle-Kellogg v. Santanello*, No. 19-CV-4943 (GRB)(JMW), 2025 WL 2664021, at *3 (E.D.N.Y. Sept. 17, 2025) ("The status of the relationship between an attorney and the parties is assessed at the time that the conflict arises,

6

not at the time that the motion to disqualify is presented to the court.") (citing *Castillo Abreu*, 2024 WL 5251985, at *2) (cleaned up).

Here, the factors weigh heavily against the existence of an attorney-client relationship between Sragow and Defendants. *See Giambrone*, 117 F. Supp. 3d at 269 ("The preliminary question is whether Defendant is a former client of [counsel].").  Defendants concede that they never signed an engagement letter or retainer agreement with Sragow.  (*See* Defs.' Mem., ECF No. 40-1 at 14.)  Further, the record establishes that Nissenbaum reasonably believed that Sragow represented GenusWave, not Defendants.  For example, in a December 2020 email to a third-party vendor regarding an NDA, Nissenbaum referred to Sragow as "GenusWave's attorney."  (Alevy Resp., ECF No. 41 at 2; Sragow Decl. Ex. 1, ECF No. 43.)  Additionally, while Defendants contend that Sragow drafted or reviewed NDAs on their behalf (*see* Defs.' Mem., ECF No. 40-1 at 10), "the sole NDA that Sragow reviewed was for Genuswave [sic], not for the Defendants," and Sragow emailed his edits of that NDA to Alevy, not to Defendants. (Alevy Resp., ECF No. 41 at 2; *see also* Sragow Decl., ECF No. 41-1 ¶¶ 12–15.) Moreover, nothing in the record supports a finding that Sragow performed legal services gratuitously for Defendants or excluded Defendants from some aspect of litigation to protect another client's interest.  And while Defendants assert that Sragow "participated in many telephone calls and Zoom meetings," (Defs.' Mem., ECF No. 40-1 at 9), Sragow did not privately communicate with Defendants at all.  (Alevy Resp., ECF No. 41 at 7.)  Defendants therefore fail to show that they had an attorney-client relationship with Sragow. Absent an attorney-client relationship between Defendants and Sragow, there is no basis to find either concurrent *or* successive representation, and thus no basis to find a conflict of interest under Rules 1.7(a)(1) and 1.9(a).  *See Almukthar v. S & A Trading USA Inc.*, 642 F. Supp. 3d 318,

326 (N.D.N.Y. 2022) ("Rule 1.7 applies to concurrent representation, which plaintiff has fail[ed] to demonstrate is at issue here as plaintiff does not even demonstrate that [the attorney] ever represented plaintiff.") (citing *Akagi v. Turin Housing Dev. Fund Co., Inc.*, 13-CV-5258 (KPF), 2017 WL 1076345, at *8 (S.D.N.Y. Mar. 22, 2017)); *see also Zappin v. Comfort*, No. 18-CV-1693, 2019 WL 409831, at *3 (S.D.N.Y. Feb. 1, 2019) ("As described above, the threshold issue for successive conflicts under both New York ethical rules and the Second Circuit is whether the movant has a prior attorney-client relationship with the lawyer or firm sought to be disqualified.")

Even assuming arguendo that an attorney-client relationship existed, Defendants have not demonstrated that Sragow obtained confidential information that could be used to disadvantage Defendants in this action. Defendants, in conclusory fashion, state that Sragow had access to Defendants' confidential information through "the parties' engagement with each other, the negotiations and contracts with third parties and the parties' discussions regarding Plaintiffs joining and becoming investors and partners in the subject UVC Technology." (Defs.' Mem., ECF No. 40-1 at 19.) However, Defendants do not explain what confidential information Sragow could have obtained from Defendants that was not *already known* to Alevy or that would otherwise prejudice Defendants in this litigation. *See Giuffre v. Dershowitz*, 515 F. Supp. 3d 123, 129 (S.D.N.Y. 2021) ("[Defendant] offers no explanation as to how replacing [counsel] with any other law firm would somehow mitigate his disadvantage when [Plaintiff] herself also had access to the confidential discovery material . . . ."); *see also Crawford v. Citibank, N.A.*, No. 2:25-CV-4750 (NJC)(LGD), 2026 WL 438122, at *3 (E.D.N.Y. Feb. 16, 2026) ("Conclusory statements will not suffice" when seeking to disqualify counsel) (citation omitted). To the extent Sragow communicated with Defendants during the

8

development of the UVC Technology, he did so in his capacity as counsel for GenusWave and Alevy.  Accordingly, the Court finds no basis to disqualify Sragow under Rule 1.9(a).

### 2.    Witness Advocate

Defendants also argue that Sragow must be disqualified because, as Nissenbaum's advisor, he attended meetings involving Defendants and was copied on multiple emails between Alevy and Defendants, and thus his testimony is central to the issue of whether Plaintiffs and Defendants formed a contract and whether Defendants misappropriated GenusWave's trade secrets.  (Defs.' Mem., ECF No. 40-1 at 17–19.)

"Under Rule 3.7(a) of the New York Rules of Professional Conduct, with limited exceptions, lawyers 'shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact,' known as the witness-advocate rule." *Pacheco v. 1454 Diner, Inc.*, No. 25-CV-4665 (PKC)(CHK), 2026 WL 279832, at *3 (E.D.N.Y. Feb. 3, 2026) (citing N.Y. Comp. Codes R. & Regs. Tit. 22 § 1200.3.7(a)).  "To this end, to disqualify an attorney under the advocate-witness rule, the movant must prove by 'clear and convincing evidence' that: (i) 'the witness will provide testimony prejudicial to the client[;]' and (ii) 'the integrity of the judicial system will suffer as a result.'" *White v. Cnty. of Suffolk*, No. 20-CV-1501 (JS)(JMW), 2023 WL 8788914, at *6 (E.D.N.Y. Dec. 19, 2023) (quoting *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178–79 (2d Cir. 2009) and citing *Ramey v. Dist. 141 Int'l Ass'n of Machinist*, 378 F.3d 269, 283 (2d Cir. 2004)).  "New York courts have interpreted this provision to require disqualification 'only when it is likely that the testimony to be given by the witness is necessary.'" *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 303 (E.D.N.Y. 2009) (citing *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437, 445–46 (1987)).

9

Defendants have failed to meet the heavy burden of showing that Sragow is a necessary witness in this action. Defendants do not explain why Sragow's involvement in the above-described events makes him more "necessary" than any other witness with personal knowledge of these facts, such as Defendants themselves. *See Prout v. Vladeck*, 316 F. Supp. 3d 784, 809 (S.D.N.Y. 2018) ("The 'availability of other witnesses is essentially fatal to the "necessity" prong of the disqualification inquiry.'") (citing *John Wiley & Sons, Inc. v. Book Dog Books*, LLC, 126 F.Supp.3d 413, 423 (S.D.N.Y. 2015)).[3]

Further, "[d]isqualification under subsection (a) [of Rule 3.7] is triggered only when the attorney actually serves as an advocate before the jury." *Finkel v. Frattarelli Bros.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010) (citing *Murray*, 583 F.3d at 179). "Speculation as to the testimony that counsel would give is not sufficient to support a motion to disqualify." *Finkel*, 740 F. Supp. 2d at 376. Here, Defendants fail to show that Sragow will serve as an advocate before the jury and that the trial of this case will require his testimony. Accordingly, the Court finds that the witness-advocate rule is not applicable here.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion to disqualify Allen P. Sragow as counsel for Plaintiff Steven Alevy (ECF No. 40) is **denied**.

**SO ORDERED.**

Brooklyn, New York
March 31, 2026

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

---

[3] When the Court posed the question of whether Sragow is a necessary witness, Defendants did not have a clear answer. (*See* Tr. 5:7–17, ECF No. 44.)

10